UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

United States of America,

           Plaintiff,           Criminal Case No. 17-CR-20053

v.

                            Honorable Stephen J. Murphy, III

D-1   Cheryl Cheatham,

           Defendant.

## United States' Response Opposing the Defendant's Motion for Compassionate Release (ECF No. 398)

Defendant Cheryl Cheatham was the most trusted and relied upon courier for prolific drug traffickers Darryl and Jerome Terrell. Cheatham was arrested transporting 17 kilograms of cocaine, but that significant seizure was only a fraction of the drugs she delivered to the father-son duo to distribute. Cheatham has served less than five years of her 12-year prison sentence. Some of Cheatham's medical conditions made her more susceptible to severe complications from Covid-19 and while in prison Cheatham contracted the virus and was hospitalized for five days. Fortunately, she has recovered, received her first dose of the Moderna vaccine, and has consistent medical treatment with doctors who are familiar with her health history at FCI Dublin in California, where she is serving her sentence.

Given Cheatham's recovery from Covid-19 and her vaccination schedule her circumstances are no longer "extraordinary and compelling" reasons for release under § 3582, despite her otherwise qualifying conditions. The § 3553(a) factors also do not support her early release, particularly her long remaining sentence for a serious drug offense. The Court should deny her motion for compassionate release.

## Background

### Offense

Cheatham regularly traveled to Detroit to deliver suitcases full of cocaine to the Terrells to distribute. Cheatham was the ideal courier. She appeared to be an unsuspecting traveler, but she was really a seasoned drug trafficker. DEA agents arrested Cheatham on October 14, 2016, with 17 kilograms of cocaine. (PSR ¶ 14) Agents identified at least 39 other round trips Cheatham made to Detroit in just 18 months. (*Id*. ¶ 21). If Cheatham delivered a similar amount each time, she likely brought more than 650 kilograms of cocaine to Detroit that ended up on the streets, but she was conservatively only held responsible for an estimated 195 kilograms (an estimated five kilograms for each prior trip). (*Id*. ¶ 22). Cheatham's bank records showed she profited from her deliveries – depositing at least $70,000 of unexplained income into her account during that time frame. Cheatham was ordered detained pending trial. (ECF No. 8). She remained in custody since her arrest. (*Id*. ¶¶ 2-3).

## Procedure

On August 28, 2017, Cheatham pleaded guilty to conspiring to distribute at least five kilograms of cocaine which required her to serve a minimum of ten years in prison. (ECF No. 73: Plea Agreement, PgID. 326, 330). On December 20, 2017, the Court sentenced her to 12 years in prison. (ECF No. 116: Judgment). Cheatham is currently incarcerated at FCI Dublin in California. She has served less than five years of her 12-year prison sentence. Her projected release date isn't until January 2027, with credit for good conduct. On June 13, 2020, Cheatham petitioned the Warden at FCI Dublin for compassionate release based on her health conditions including COPD, asthma, and high blood pressure in light of concerns about contracting Covid-19. (Gov. Ex. 1: Cheatham's Petition). On July 2, 2020, the Warden denied Cheatham's request for early release. (Gov. Ex. 2: Warden's Denial). Cheatham subsequently contracted Covid-19 and on December 18, 2020, was hospitalized for five days.  As of December 23, 2020, she was deemed recovered and returned to FCI Dublin where Cheatham continues to receive attention for any medical needs.

On March 30, 2021, the Court docketed Cheatham's motion for compassionate release and request for appointed counsel. (ECF No. 398). The Court did not appoint counsel and ordered the government to respond by April 13, 2021. (ECF No. 399).

Because Cheatham filed her motion more than 30 days after her request for a reduction in sentence to the Bureau of Prisons (BOP) she has exhausted her administrative remedies. But Cheatham should not be granted compassionate release.

## Argument

I.   **The BOP determined Cheatham should not be released even when operating under expansive directives to identify suitable inmates for home confinement.**

Covid-19 is prevalent in society and despite its best efforts to protect its inmates like all other institutions, penal and otherwise, the BOP has not been able to eliminate the risks from Covid-19 completely. In the face of Covid-19 the BOP implemented a detailed protocol to help protect inmates and try to minimize the virus's spread in its facilities. BOP Covid-19 Modified Operations Website. *Wilson v. Williams*, 961 F.3d 829, 833–34 (6th Cir. 2020). But for those who are infected the BOP has endeavored to ensure those inmates receive any required medical care during these difficult times.

Operating under expansive directives from the Attorney General, the BOP has assessed its entire population to increase the placement of inmates in home confinement who face the most risk from Covid-19 (based on age and vulnerability), pose the least danger to public safety, and can safely be granted home confinement. Coronavirus Aid, Relief, and Economic Security Act (CARES

Act) § 12003(b)(2), Pub. L. No. 116-136, 134 Stat. 281, 516 (Mar. 27, 2020); (03-26-2020 Directive to BOP, at 1; *accord* 04-03-2020 Directive to BOP, at 1).

The BOP has focused on the inmates who have the highest risk factors for Covid-19 and are least likely to engage in new criminal activity. The BOP has released more than 7,399 inmates on home confinement (last visited April 8, 2021). As the Sixth Circuit stressed, these efforts show that "[t]he system is working as it should": "A policy problem appeared, and policy solutions emerged." *United States v. Alam*, 960 F.3d 831, 836 (6th Cir. 2020).

But even in light of those directives, the BOP did not release Cheatham on their own volition and denied her request when she applied. The BOP must also consider an inmate's criminal history, violations during prior supervision, and any disciplinary record while at the BOP as indicative of whether the inmate would abide by the terms of home confinement if released. Here, the BOP's determination that Cheatham was not an appropriate candidate for release should be given deference by this Court.

II. **The Court should deny Cheatham's motion for compassionate release.**

   A. **Because Cheatham recovered from Covid-19 and received her first vaccine dose her circumstances are no longer "extraordinary and compelling."**

The First Step Act of 2018 allows a defendant to file a motion with the Court for compassionate release if the BOP does not. Inmate initiated motions for

compassionate release require issue specific administrative exhaustion. If a defendant moves for compassionate release under 18 U.S.C. §3582(c)(1)(A), the district court may not act on the motion unless the defendant files it "after" either completing the administrative process within the BOP or waiting 30 days from when the warden at his facility received his request. This requirement is mandatory and "must be enforced when the government raises it. *United States v. Alam*, 960 F.3d 831, 832-36 (6th Cir. 2020) *accord United States v. Raia*, 954 F.3d 595-97 (3d Cir. 2020). The timing of Cheatham's motion is proper.

Resolving a properly filed motion for compassionate release on the merits involves a "three-step inquiry": a district court must (1) "find that extraordinary and compelling reasons warrant a sentence reduction," (2) "ensure that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) "consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *Elias*, ___ F.3d ___, No. 20-3654, 2021 WL 50169, at *2 (6th Cir. Jan. 6, 2021); 18 U.S.C. § 3582(c)(1)(A). In *Elias*, 2021 WL 50169, at *2, the Sixth Circuit held that USSG § 1B1.13 is not an "applicable" policy statement for defendant-initiated motions for compassionate release, so there is no policy statement to analyze under the second prong of the *Elias* test.

For a defendant to show that their circumstances meet the first strict statutory criteria they must show their reasons are "extraordinary"—meaning exceptional or

6

uncommon. *United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020); *United States v. Sapp*, No. 14-CR-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020). A defendant must also show their reasons are "compelling"—meaning "so great that irreparable harm or injustice would result if the relief is not granted." *Sapp*, 2020 WL 515935, at *3. In the *pretrial*-release context, the Sixth Circuit has already addressed what qualifies as a "compelling" reason for release based on Covid-19. *United States v. McGowan*, No. 20-1617, 2020 WL 3867515, at *2 (6th Cir. July 8, 2020); *Bothra*, 2020 WL 2611545, at *2. That analysis considers (1) the "original grounds" for the defendant's incarceration; (2) the "specificity" of [her] "stated Covid-19 concerns"; (3) the extent to which the proposed release plan would "mitigate or exacerbate" [her] risk from Covid-19; and (4) the risk from Covid-19 that [a] release would pose to others. *McGowan*, 2020 WL 3867515, at *2. A defendant must establish both criteria to satisfy the statute's eligibility threshold.

### i.  Cheatham's age and medical condition made her more susceptible to Covid-19.

Cheatham's age (67) and her COPD would have otherwise been considered "extraordinary and compelling" under the statute, but because she has recovered from Covid-19 and received her first vaccination her circumstances no longer qualify.

7

Cheatham is 67 years old and her medical records establish she has COPD, which the CDC has confirmed are risk factors that can make you more likely to get severely ill from Covid-19. It's also possible her primary essential hypertension could have made Cheatham more likely to get severely ill from Covid-19. Moderate to severe asthma can be an increased risk factor, but Cheatham's medical records do not note the severity of her asthma. Cheatham referenced a history of emphysema in her motion, but medical records do not confirm she has been diagnosed with that condition. (ECF No. 398: Defendant's Motion, PgID. 2976). None of Cheatham's other health issues, such as her osteoarthritis, nor her psychiatric history, including her schizophrenia and bi-polar disorder, qualify as higher risk conditions. *See* CDC Risk Factors (as updated). (Gov. Sealed Ex. 3: BOP Medical Records, pg. 74).

Cheatham unfortunately contracted Covid-19. Cheatham first exhibited symptoms on December 11, 2020 and was placed in isolation after a Rapid test confirmed she was positive for Covid-19. (*Id*. at pgs. 11, 21-22, 190). Staff at FCI Dublin monitored Cheatham's condition and consistently checked her oxygen saturation (SaO2 – level of oxygen in blood) levels[1]. (*Id*. at pgs. 9, 110, 173-75). Cheatham was hospitalized on December 18, 2020, when her condition

---

[1] An individual's oxygen saturation should be above 94 at a healthy level. Some Covid-19 patients can experience hypoxia (insufficient blood flow of the lungs' airways and blood vessels within the lungs).

deteriorated. (*Id*. at pgs. 11-12, 16). She remained in the hospital for five days until she recovered. (*Id*. at pgs. 359, 364, 378- 398-99, 404, 412, 421). During her stay Cheatham was treated with supplemental oxygen, but she was never placed on a ventilator. (*Id*. at pgs. 10, 363, 368-74, 426).

Other courts in this district have denied compassionate release for defendants who were also hospitalized for longer periods due to Covid-19 and had to be placed on a ventilator. *See United States v. Dawson*, No. 19-20180, 2020 WL 3410771 (E.D. Mich. June 22, 2020) (J. Cleland) (insulin dependent diabetic, hospitalized and was on respirator. Release denied after removed from respirator, but while still in hospital.); *United States v. Smith*, No. 17-CR-20753, 2020 WL 5440331 (E.D. Mich. Sept. 10, 2020) (J. Ludington) (54 years old, obese, hospitalized for more than 30 days and was on respirator during stay. Release denied after returned to FCI despite lingering effects of Covid-19). Fortunately, Cheatham's condition was never as severe as either Defendants' who other Courts would not release, making her case for release even less persuasive.

### ii. Cheatham recovered from Covid-19.

Cheatham was able to return to FCI Dublin on December 23, 2020. When she was discharged, she was prescribed five liters of oxygen and advised to continue steroids for five days. (Gov. Sealed Ex. 3: BOP Medical Records, pg. 3). Cheatham was still isolated from the rest of the inmate population and her

9

condition was closely monitored. Medical staff assessed Cheatham's condition daily. Her vitals were all within normal limits and she maintained normal saturation levels without supplemental oxygen. (*Id*. at pgs. 7, 154-170, 255, 258, 279, 289-90, 303-11). Cheatham continued to improve and was weaned off supplemental oxygen after January 4, 2021. (*Id*. at pg. 290). Medical records show that not only did medical staff diligently monitor Cheatham before and after she was hospitalized, she has routinely received preventative routine screenings and consistent medical treatment by staff who are familiar with her health history.

Cheatham having recovered from Covid-19, developed natural immunity, and even before she received her first vaccine dose was not likely to be reinfected. The CDC has indicated that while some cases of reinfection have been reported, the risk is rare. *See* https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html. And a recent study published by the National Institute of Health has shown that individuals who recovered from Covid-19 may have natural immunity for at least 6-8 months. *See* https://www.nih.gov/news-events/nih-research-matters/lasting-immunity-found-after-recovery-covid-19.

Another Court found a defendant failed to establish "extraordinary and compelling" reasons for release after recovering from Covid-19. *See United States v. Green*, No. 13-20606, 2020 WL 5769141, at *2 (E.D. Mich. Sept. 28, 2020) (Edmunds, J.) (finding defendant failed to show "extraordinary and compelling

10

reasons," in part because "even if Defendant has a heightened risk for severe illness from the virus, this risk did not manifest itself when Defendant contracted the virus," and observing "[i]t is unclear whether a person can be re-infected with Covid-19, but patients infected with other similar viruses are unlikely to be re-infected shortly after they recover"). Cheatham's recovery from Covid-19 negates her previously "extraordinary and compelling" reasons for release.

### iii. Cheatham received her first Covid-19 vaccination.

Most importantly, Cheatham received her first dose of the Moderna vaccine on March 30, 2021. (Gov. Ex. 4: Vaccination Record). She should receive her second dose on or about April 30, 2021[2]. By May 14, 2021, Cheatham will be considered fully vaccinated according to the CDC. The Moderna vaccine has been found in clinical trials to be 94.1% effective at preventing illness in those not previously infected. *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html. And even one dose of the Moderna vaccine provides robust protection for someone like Cheatham who has already recovered from Covid-19. Research even suggests prior Covid patients may not need a second dose. *See* https://www.webmd.com/vaccines/covid-19-vaccine/news/20210211/youve-had-covid-1-vaccine-dose-may-be-enough;

---

[2] Moderna is a two dose vaccine series separated by 28 days. *See* https://www.cdc.gov/vaccines/covid-19/info-by-product/moderna/index.html

https://www.nytimes.com/2021/02/01/health/have-you-had-covid-19-coronavirus.html. And in more promising news, the Moderna vaccine provides protection against some of the more contagious strains of the virus, including the U.K variant and two identified in California. *See* https://www.npr.org/sections/coronavirus-live-updates/2021/01/25/960341384/moderna-finds-covid-19-vaccine-less-effective-against-variant-found-in-south-afr; https://corporate.dukehealth.org/news/study-finds-two-covid-vaccines-effective-against-variant-arising-california.

Cheatham's natural immunity has only been boosted by the efficacy of the Moderna vaccine. And like the period of potential natural immunity, it was just found that the Moderna vaccine provides at least six months of protection. But at this point that is just a floor, not a ceiling. Vaccine protection could last longer. *See* Moderna COVID Vaccine Offers Protection for at Least 6 Months: Study | Health News | US News.

As inmates begin to receive vaccinations some Courts in this District have found their circumstances no longer qualify as "extraordinary and compelling," because their risk has been mitigated, even if their underlying medical conditions made them more at risk for severe illness from Covid-19. *See United States v. Smith*, No. 17-20753, 2021 WL 364636 (E.D. Mich. Feb. 3, 2021) (J. Ludington) (Defendant's vaccination (two doses of the Moderna vaccine) against Covid-19 precludes the

12

argument that his susceptibility to the disease is "extraordinary and compelling" for purposes of 3582(c)(1)(A)); *United States v. Goston*, No. 15-20694, 2021 WL 872215 at *2 (E.D. Mich. Mar. 9, 2021) (J. Levy) (Defendant's access to [and refusal of] the Covid-19 vaccination mitigates any extraordinary and compelling reasons that might otherwise justify release); *United States v. McGill*, 2021 WL 662182, at *5 (D. Md. Feb. 19, 2021) (relief denied because the defendant has a measure of immunity conferred by recovering from COVID-19, and receiving the first dose of the vaccine).

Now that Cheatham has recovered from Covid-19 and had the benefit of natural immunity until she received the vaccine, her risk has likewise been mitigated and her case is no longer 'extraordinary or compelling."

Cheatham's release plan does nothing to help her case. She proposes she return to live with her daughter, the same person she resided with when she crisscrossed the country each month delivering drugs. (ECF No. 398: Defendant's Motion, PgID. 2976; PSR ¶ 69). *See Smith*, No. 17-20753, 2021 WL 364636 (Denial also based on Defendant's failure to identify how his living circumstances would differ from those that preceded his conviction). Cheatham is right that at 67 she should be too old to engage in further criminal activity, but that is the same thing her family told her when she was committed this offense in her mid-60s. (ECF 398: Defendant's Motion, PgID. 2976; PSR ¶ 68).

13

> **iv.     The BOP continues to take precautionary measures to mitigate the spread of Covid-19.**

In addition to Cheatham's low risk of re-infection, FCI Dublin, like all other BOP institutions, continues to take measures to try to reduce the spread of Covid-19, including restricted movement within and between its facilities. *Wilson*, 961 F.3d at 834. Asymptomatic inmates who arrive at a facility are placed in quarantine for a minimum of 14 days, while symptomatic inmates are evaluated and treated while isolated from other inmates until testing negative for Covid-19 or being cleared by medical staff under the CDC's criteria. *Id.* Within its facilities, the BOP has "modified operations to maximize physical distancing, including staggering meal and recreation times, instating grab-and-go meals, and establishing quarantine and isolation procedures." *Id.* Staff and inmates are issued face masks to wear in public areas. *See* [BOP FAQs: Correcting Myths and Misinformation](). When visitation is permitted at an institution, the visits are non-contact, require masks, and social distancing between inmates and visitors is enforced, either via the use of plexiglass (or similar barriers), or physical distancing (i.e., six feet apart). Visitors are screened for Covid-19 symptoms and their temperature is checked and if sick are not allowed to visit. But to ensure that relationships and communication are maintained throughout this disruption, the BOP has increased inmates' telephone allowance to 500 minutes per month, and legal visits are accommodated upon

14

request. *See* BOP Modified Operations. It is unclear how releasing Cheatham to her daughter would better mitigate any future exposure to Covid-19, especially given Cheatham's protection as a result of the vaccine she received from the BOP.

Furthermore, even in the face of this pandemic, this Court must also weigh whether the sentencing factors undermine release. And in Cheatham's case they do.

### III. The factors in 18 U.S.C. § 3553(a) strongly weigh against compassionate release.

Even when an inmate has shown "extraordinary and compelling reasons," she is still not entitled to compassionate release. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate. 18 U.S.C. § 3582(c)(1)(A). A defendant's failure to establish that the § 3553(a) factors support relief is an independent basis for denying compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1008–09 (6th Cir. 2020); *accord United States v. Austin*, 825 F. App'x 324, 325–27 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors); *United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (same). An assessment of the § 3553(a) factors alone should still disqualify Cheatham.

Cheatham's offense was serious— so serious that Congress mandated a minimum sentence of ten years imprisonment. The Court should not undermine that by releasing Cheatham early. And Cheatham's long remaining sentence –

15

approximately six years – weighs heavily against release. The Sixth Circuit has repeatedly upheld the denial of compassionate release under § 3553(a) when a defendant has a long remaining sentence, including in a recent published decision. *Ruffin*, 978 F.3d at 1008; *accord Kincaid*, 802 F. App'x at 188–89; *Austin*, 825 F. App'x at 326; *see also United States v. Kincaid*, 805 F. App'x 394, 395–96 (6th Cir. 2020) ("[W]e don't think [the defendant] raises a close question."). This is because the original sentence already reflects the district court's evaluation of "the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law" under § 3553(a). *Kincaid*, 802 F. App'x at 188; *accord Ruffin*, 978 F.3d at 1008.

The plain language of the compassionate-release statute makes the point even more directly: it requires that the defendant's reasons for release "warrant such a reduction" in the sentence. 18 U.S.C. § 3582(c)(1)(A)(i). That inquiry depends, at least in part, on the length of time remaining on the defendant's sentence, requiring him to justify the magnitude of his requested sentence reduction. *Id.* So Cheatham who has served less than half of her sentence must show that her reasons for release are so powerful that they "warrant" a "reduction" of that size. *Id.*

Cheatham's age and health conditions do not undermine the continued need to protect the public from her future crimes. Despite her pre-existing physical conditions and mental health issues, Cheatham committed the instant offense well

16

into her 60s. And at the time this Court sentenced her to 12 years in prison, Cheatham already had a lengthy criminal history that included six prior felony convictions. (PSR ¶ 98). While the nature of the convictions (shop lifting) are not the most eggregious offenses, Cheatham's contact with law enforcement and criminal history is extensive, spanning 30 years of her adult life. Cheatham was repeatedly placed under court supervision, but continued to engage in criminal conduct. She also used aliases when interacting with law enforcement, and failed to appear for scheduled court dates. (*Id*. ¶ 40).

Cheatham's record casts significant doubt on whether she would abide by release conditions if released from custody and are an independent basis to deny her request for release.

### IV. If the Court were to grant Cheatham's motion, it should order a 14-day quarantine before release.

If the Court were inclined to grant Cheatham's motion despite the government's arguments above, the Court should order that he be subjected to a 14-day quarantine before release.

### Conclusion

Dantzler's motion should be denied.

                        Respectfully submitted,

                        Saima Mohsin
                        Acting United States Attorney

                                                    s/ Andrea Hutting
Andrea Hutting
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, MI 48226
313-226-9110 phone
andrea.hutting@usdoj.gov
P68606

Dated: April 13, 2021

CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system and mailed a copy of this response to the defendant as follows:

Cheryl Cheatham
Inmate # 55071-039
F.C.I. Dublin
5701 8th Street – Camp Parks
Dublin, CA 94568

        s/Andrea Hutting
        Andrea Hutting
        Assistant United States Attorney
        211 W. Fort Street, Suite 2001
        Detroit, MI 48226
        313-226-9110 phone
        andrea.hutting@usdoj.gov